UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MUJEEB OMAR SAIF HUMAID,

                Plaintiff,

       v.

MERRICK GARLAND, UNITED STATES
ATTORNEY GENERAL, THE UNITED
STATES DEPARTMENT OF JUSTICE,
U.S. DEPARTMENT OF STATE,
BUREAU OF CONSULAR AFFAIRS, and
CONSULAR GENERAL, U.S. EMBASSY,
DJIBOUTI, DJIBOUTI,

                Defendants.
_____

**DECISION AND ORDER**

6:23-CV-06071 EAW

# INTRODUCTION

    Plaintiff Mujeeb Omar Saif Humaid ("Plaintiff"), a naturalized U.S. citizen, began the process to bring his three daughters to the United States 16 years ago. He seeks mandamus action and declaratory relief to compel the Attorney General of the United States, the Department of Justice, the Department of State, the Bureau of Consular Affairs, and the Consular General of U.S. Embassy Djibouti, Djibouti (collectively "Defendants") to grant immigrant visas to his daughters, or, alternatively, to "suspend action and return [his daughters'] petitions to USCIS through the [National Visa Center] for further proceedings in compliance with [the Department of State Foreign Affairs Manual] ("FAM")." (Dkt. 1 at ¶ 1). Plaintiff also requests a judicial declaration stating that "Defendants' failure to timely adjudicate [the visa applications] is contrary to and inconsistent with applicable INS statutes, regulations and operating instructions, in

violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §[§] 701 et seq., as well as contrary to and inconsistent with the due process clause of the Fifth Amendment." (*Id.* at 10).

Presently before the Court is Defendants' motion to dismiss. (Dkt. 6). For the reasons explained below, Defendants' motion is granted.

## FACTUAL BACKGROUND

The following facts are taken from the allegations in Plaintiff's complaint. (Dkt. 1). As required at this stage of the proceedings, Plaintiff's allegations are treated as true.

Plaintiff's three daughters are Salamat Mohamed Saleh Asadd (born in 1990), Ekhlas Mohamed Saleh Asadd (born in 1992), and Sabreen Mohamed Saleh Asadd (born in 1994).[1] (*Id.* at ¶ 1). While Plaintiff does not specify the country of birth or citizenship of his three daughters, the Court presumes they are citizens of Yemen based on the fact that their consular interviews occurred at the U.S. Embassy in Sanaa, Yemen in 2013[2] (*id.* at ¶ 37), their pursuit of legal name changes in Yemen (*id.* at ¶ 46), and Plaintiff's former nationality (Dkt. 1-1). Plaintiff is the biological father of his three daughters. (Dkt. 1 at ¶ 32; Dkt. 1-8; Dkt. 1-9; Dkt. 1-10). The mother of Plaintiff's daughters, now deceased,

---

[1] The names of Plaintiff's daughters are spelled inconsistently in the complaint and U.S. Government documents. (*See, e.g.,* Dkt. 1 at ¶¶ 1, 13; Dkt. 1-14; Dkt. 1-15; Dkt. 1-16). The Court uses the spelling of the names that appear most often in the complaint and U.S. Government documents.

[2] Visa services at the U.S. Embassy in Sanaa have since been suspended. Immigrant visas for Yemeni citizens are currently processed at the U.S. Embassy in Djibouti. *See* U.S. Mission to Yemen, https://ye.usembassy.gov/visas/ (last visited January 29, 2024).

was married to her former husband when her daughters were born, and she later married Plaintiff. (Dkt. 1 at ¶¶ 26, 29). At birth, Plaintiff's daughters were given middle and last names that matched the name of their mother's former husband, rather than Plaintiff (their biological father).³ (*Id.* at ¶¶ 23, 29).

In 2007, Plaintiff submitted Form I-130, "Petition for Alien Relative," to U.S. Citizenship and Immigration Services ("USCIS") for each of his daughters to classify them as his immediate relatives. (*Id.* at ¶ 23; Dkt. 1-2; Dkt. 1-3; Dkt. 1-4). USCIS required Plaintiff and his daughters to submit to DNA testing to establish their biological relationship. (Dkt. 1 at ¶ 31; Dkt. 1-5; Dkt. 1-6; Dkt. 1-7). Plaintiff provided DNA test results establishing his paternity to USCIS, which approved the I-130 petitions in 2009. (Dkt. 1 at ¶¶ 32, 35; Dkt. 1-8; Dkt. 1-9; Dkt. 1-10; Dkt. 1-11; Dkt. 1-12; Dkt. 1-13).

In 2013, the U.S. Embassy in Sanaa conducted immigrant visa interviews of Plaintiff's three daughters. (Dkt. 1 at ¶ 37). At their interviews, Plaintiff's daughters presented documents to the consular officer reflecting their birth names, which were based on the name of their mother's former husband. (*See* Dkt. 1-14; Dkt. 1-15; Dkt. 1-16). The consular officer concluded that each daughter intended to deceive the officer because her "correct identity" matched the middle and last name of her biological father (Plaintiff) rather than the name listed on the identity documents that she presented at the interview.⁴

---

³ Plaintiff's wife's name was Salma Kasem Saleh. (Dkt. 1 at ¶ 29). Her former husband's name was Mohamed Saleh Asadd. (*Id.*).

⁴ For instance, Salamat Mohamed Saleh Asadd received the following explanation in her rejection notice: "At the interview applicant presented consular officer with passport, birth certificate, and application claiming that her correct name is Salamat Mohammed

- 3 -

(*Id.*). The consular officer found each daughter inadmissible and refused to grant visas under the Immigration and Nationality Act ("INA") § 212(a)(6)(C)(i)[5] for making a material misrepresentation. (Dkt. 1 at ¶ 37; Dkt. 1-14; Dkt. 1-15; Dkt. 1-16). According to the rejection notice that each daughter received, "[t]he applicant will be refused in person and the petition sent back to CIS for revocation." (Dkt. 1-14; Dkt. 1-15; Dkt. 1-16).

The U.S. Embassy in Sanaa did not return "the file" to USCIS and instead forwarded each daughter's paperwork to the U.S. Embassy in Djibouti. (Dkt. 1 at ¶ 42). On June 5, 2022, Plaintiff's daughters underwent immigrant visa interviews in Djibouti, and consular officers rejected their applications on the same ground. (*Id.* at ¶ 43; Dkt. 1-17; Dkt. 1-18; Dkt. 1-19). Plaintiff and his daughters made repeated requests to the U.S. Embassy in Djibouti to grant the immigrant visas, including filing a "Motion to Reconsider," or to return their approved petitions to USCIS for further action. (Dkt. 1 at ¶¶ 44-45, 47). On an unspecified date, Plaintiff's daughters obtained a court order in Yemen to change their middle and last names to match their biological father's name, rather than the name of their mother's former husband. (*Id.* at ¶¶ 46, 48). They also obtained new identity documents to reflect their court-approved name changes. (*Id.*). On November 1, 2022, Plaintiff's

---

Saleh. Applicant's correct identity is Salamat Mujeeb Omar Humaid, reflecting the name of her biological father who is also the petitioner. Petitioner is living in the U.S. under an assumed identity. Salamat's misrepresentation was meant to deceive the consular officer and is significantly different from her true identity and is material to the immigration benefit sought as there is no open petition for Salamat Mujeeb Omar Humaid." (Dkt. 1-14). Her sisters received rejection notices containing the same explanation. (Dkt. 1-15; Dkt. 1-16).

5      8 U.S.C. § 1182(a)(6)(C)(i).

daughters submitted a request to the U.S. Embassy in Djibouti to approve their visa applications or suspend action and return their petitions to USCIS pursuant to Volume 9, FAM § 504.2-8(A)(2), so that USCIS could take further action.  (*Id.* at ¶ 47).

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on January 26, 2023.  (Dkt. 1).  Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted on April 6, 2023.  (Dkt. 6).  Plaintiff filed a response in opposition to the motion to dismiss and included a request that the Court "suspend adjudication of the present motion till the Defendant, the Department of Justice, through USCIS, Vermont Service Center issues Notice of Reaffirmation of prior approval or 'Notice of Intent to Revoke' petition approved on August 25, 2009 providing the Plaintiff an opportunity to respond to the allegations."  (Dkt. 8 at ¶ 2).  Defendants filed their reply in further support of their motion to dismiss and argued that the motion "should not be held in abeyance to allow a non-party [USCIS] to take an action that it is not even required to take."  (Dkt. 9 at 2).

## DISCUSSION

### I. Legal Standard—Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). In addition, a court is not limited to the allegations in the complaint and can "refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in . . . affidavits," *J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005).

"Where . . . the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted).

## II. Defendants' Motion to Dismiss

Defendants argue that this action should be dismissed because the Court lacks jurisdiction based on the consular nonreviewability doctrine, standing, and mootness. (Dkt. 6-2 at 7). Defendants further contend that Plaintiff's action should be dismissed for failure to state a claim upon which relief can be granted because the INA preempts the APA in this

- 6 -

circumstance, Plaintiff has not established that the FAM can serve as a basis for an APA claim (assuming the APA was not preempted), and Plaintiff has not demonstrated a basis on which the Declaratory Judgment Act can provide relief in this circumstance. (*Id.*). Because the Court concludes that the consular nonreviewability doctrine bars the relief that Plaintiff seeks and, alternatively, that Plaintiff lacks standing to pursue the claims asserted herein, it need not and does not reach the other issues raised by Defendants.

### A. Doctrine of Consular Nonreviewability

Federal courts generally lack jurisdiction to review a consular officer's rejection of a visa application under the doctrine of consular nonreviewability. *See Xian Yong Zeng v. Pompeo*, 740 F. App'x 9, 10 (2d Cir. 2018) (citing *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009)); *Khanom v. Kerry*, 37 F. Supp. 3d 567, 573 (E.D.N.Y. 2014). The Second Circuit has indicated that a U.S. citizen may be able to seek federal court review of a visa denial for violating the citizen's constitutional rights, but this narrow exception is not available if the consular officer provides "a facially legitimate and bona fide reason" for denying the visa. *See Lleshi v. Kerry*, 127 F. Supp. 3d 196, 201 (S.D.N.Y. 2015) (citing *Am. Acad. of Religion*, 573 F.3d at 121). A violation of 8 U.S.C. § 1182(a)(6)(C)(i) for making a willful material misrepresentation is "a facially legitimate and bona fide reason" to deny a visa. *Alharbi v. Miller*, 829 F. App'x 570, 572 (2d Cir. 2020) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)); *Xian Yong Zeng*, 740 F. App'x at 11. Furthermore, visas are not "a life, liberty, or property interest sufficient to invoke the protections of due process." *Lleshi*, 127 F. Supp. 3d at 201.

While Plaintiff alleges that his daughters' inability to receive immigrant visas is a due process violation, Plaintiff's claim is conclusory and offers no legal basis to support a plausible constitutional claim.  *See Kaur v. Boente*, No. 16-CV-6252-FPG, 2017 WL 475677, at *3 (W.D.N.Y. Feb. 6, 2017) (finding U.S. citizen parent had no due process claim for denial of visa to her son); *Lleshi*, 127 F. Supp. 3d at 201 (holding judicial review precluded when plaintiff's constitutional claim was based on denial of a visa).  Even if Plaintiff had presented a viable constitutional claim, consular officers who interviewed Plaintiff's daughters for immigrant visas found that each of them violated 8 U.S.C. § 1182(a)(6)(C)(i) by making material misrepresentations.  Plaintiff, the biological father of his daughters, argues that consular officers may have misunderstood his daughters' middle and last names because their mother was married to a different man when they were born, but the Court cannot review the visa denials even if they were based on conclusions that were "erroneous, arbitrary, or contrary to agency regulations."  *See Kaur*, 2017 WL 475677, at *3.  Since consular officers' conclusions that Plaintiff's daughters made willful material misrepresentations serves as a "facially legitimate and bona fide reason" to deny a visa, the consular nonreviewability doctrine deprives this Court of jurisdiction.  *See Alharbi*, 829 F. App'x at 572; *Xian Yong Zeng*, 740 F. App'x at 11.

Plaintiff's argument that the consular nonreviewability doctrine does not apply in this context because his daughters have "USCIS approved petition[s]" is misplaced.  (*See* Dkt. 8 at ¶ 8).  Plaintiff seemingly believes that an individual who has an approved I-130 petition is entitled to an immigrant visa or, at a minimum, access to a dispute or reconsideration mechanism at USCIS, but cites no case law to support this contention.

Receipt of a USCIS-approved I-130 form is separate from receipt of an immigrant visa, the latter of which a U.S. Embassy issues. *See Drax v. Reno*, 338 F.3d 98, 114-15 (2d Cir. 2003); *Kumar v. U.S. Citizenship & Immigr. Servs.*, No. 16-CV-3609 (CBA), 2017 WL 3268373, at *1 (E.D.N.Y. July 28, 2018), *aff'd*, 735 F. App'x 13 (2d Cir. 2018). Once an individual has an approved I-130 form, they "must still apply for a visa with the State Department." *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 658 (S.D.N.Y. 2018).[6]

Since Plaintiff seeks immigrant visas for his daughters, his claim falls squarely within the doctrine of consular nonreviewability. Accordingly, Defendant's motion to dismiss is granted.

### B. Standing

Alternatively, even if not barred by the doctrine of consular nonreviewability, the Court would grant the pending motion because Plaintiff lacks standing. "Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (alteration in original) (internal citations omitted). "To satisfy the requirements of Article III standing, a plaintiff must demonstrate '(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between

---

[6] In fact, Plaintiff's attorney has previously and unsuccessfully made this same argument—that the doctrine does not apply to scenarios in which an individual has an approved I-130 petition—in this District. *See Kaur*, 2017 WL 475677, at *3 ("Although Plaintiffs assert that the doctrine of consular nonreviewability 'does not apply to consular actions relating to [USCIS] approved petitions' and '[t]he [c]ourts have jurisdiction where the consular officer made a procedural error . . . they cite no authority for those propositions and the Court finds them unpersuasive.").

the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (alteration in original) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)).

Here, Plaintiff has failed to demonstrate that any harm he has suffered is based on "a legally protected interest." As discussed above, Plaintiff has failed to establish a cognizable constitutional claim under the Due Process Clause. Plaintiff asserts that a court has statutory jurisdiction under 28 U.S.C. § 1331 (federal question), § 1361 (mandamus relief), and 5 U.S.C. § 500 *et seq*. (the APA). (Dkt. 1 at ¶ 4). However none of these statutes confers jurisdiction in this circumstance. *See Khanom*, 37 F. Supp. 3d at 574-75, 577 (plaintiff could not cite federal question statute, mandamus relief, or the APA to confer jurisdiction to compel issuance of immigrant visas to husband and children); *Lihua Jiang v. Clinton*, No. 08-CV-4477 (NGG)(RML), 2011 WL 5983353, at *4 (E.D.N.Y. Nov. 28, 2011). Failing to show that he possesses a legally protected interest, Plaintiff has no standing to bring this action.

### III. Plaintiff's Request to Hold Matter in Abeyance

Finally, the Court notes that Plaintiff appears to request a stay of this matter in his response to Defendants' motion to dismiss by asking the Court "to suspend adjudication of the present motion till the Defendant, the Department of Justice, through USCIS, Vermont Service Center issues Notice of Reaffirmation of prior approval or 'Notice of Intent to Revoke' petition approved on August 25, 2009 providing the Plaintiff an opportunity to respond to the allegations." (Dkt. 8 at ¶ 2). Plaintiff submits no legal authority to show

that the Court has jurisdiction to review any subsequent measures that USCIS—a non-party in this action—may take with the petitions of Plaintiff's daughters. Furthermore, Plaintiff's request reflects his incorrect perception—as discussed above—that an individual's approved I-130 petition equates to an entitlement to an immigrant visa.[7] Accordingly, a stay is not appropriate and any such request is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 6) is granted. The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 31, 2024
       Rochester, New York

---

[7] Plaintiff argues, "USCIS website [sic] continues to show that USCIS approved Plaintiff's form I-130, Petition for Alien Relative, on **August 25, 2009**. There is no reasonable justification for the Defendants to delay adjudication of Plaintiff's Petitions filed in 2007 **(16 years ago)** and prevent him from uniting with his daughters." (Dkt. 8 at ¶ 1).